Good morning, Your Honors. May it please the Court, my name is John Meyer. I'm here on behalf of Appellant Cottonwood Environmental Law Center. I'd like to reserve three minutes for rebuttal, please. This case involves the Forest Services analysis or lack of analysis in southwest Montana for domestic sheep grazing in the Gravely Mountains. The Gravely Mountains are really important because they are a corridor that can link the Yellowstone National Park grizzly bear population to the Glacier National Park population. Those populations are not connected and there's concern from biologists that there need to be to ensure there's genetic connectivity. And so right in the heart of this public land corridor for grizzly bears, we have 15,000 domestic sheep grazing. And there's been dead grizzly bears, dead wolves, dead coyotes, black bears, all sorts of things. In this mountain range, the Gravely Range, there's a mountain called Bighorn Mountain. Bighorn sheep are not allowed on Bighorn Mountain because of domestic sheep. And so the plaintiffs in this case, in 2015, asked the Forest Service to look at this significant new information. There's dead grizzly bears, there's bighorn sheep that are dead. This is new information that requires you to prepare supplemental NEPA analysis. And we also said this information is significant. In the answering brief, the government argues plaintiffs have not pointed to any legal authority that creates some new discrete legal requirement to prepare a new NEPA analysis. And they say because plaintiffs have alleged no further discrete action that the Forest Service is required to take, their claim has to be dismissed for lack of subject matter jurisdiction. Point to legal authority, and if so, where is it in Europe? And besides that, what's the further discrete action the Forest Service is required to take? Do they have to do a new NEPA? Your Honor, the Forest Service has to prepare supplemental NEPA analysis. That is the discrete agency action, is the supplemental NEPA analysis. But they did so here. They created a FONSI in response to the district court. You went to the district court. The district court said, you know, you make a good case. They may not have considered all these matters that you raise. You sent it back to the Forest Service, and they said, now we've considered them. We don't think they have a significant environmental impact. And now you're back in the district court, and you say, well, they were wrong. They really do have a significant environmental impact. And the district court said, you raised these issues before, and I sent it back. And so this is claim preclusion. You can't raise new issues now in front of me. And I think the Forest Service did what it needed to do when I sent it back. That's the decision you're now attacking. What's wrong with that decision? The second decision, Your Honor? Yes, because you're not appealing the first one. First one, you won. Yeah, yeah, exactly. You like that result. Yeah. Second time, you come back to Judge Morris, and you say, they didn't sufficiently consider some issues. And he says, those issues existed back when you first came to me. And if you thought they hadn't sufficiently considered them, you should have raised them to me then, and I would have ordered them to consider them and address them. But you didn't, and therefore, your claim is barred by claim preclusion. Would you address that ruling for me and tell me why you think it's wrong?  I mean, there's the same dead bighorn sheep in both instances, right? There's only one. I believe so, Your Honor, yes. So I'm having trouble. To the extent that when you come back up and say, well, you sent them back to consider some stuff, but they didn't consider A, B, and C, I think Judge Morris makes some sense when he says A, B, and C existed back when you first came to me. And if you thought those were issues they should have considered, you should have told me that, and I probably would have ordered them to consider them. But you can't wait now to raise them for the first time. That seems to me the basis of his claim preclusion ruling. Tell me why you think that's wrong. These are different final agency actions, Your Honor. We could have never challenged the significance determination in Gallatin I. The case we won, we could have never challenged the significance determination because it was never decided until after Gallatin I. No, no. Of course you couldn't have decided the significance determination, but you could have raised the issue that these facts that you raised for the first time and the second time were issues that the agency should have considered. And I think what the judge was saying is you can't keep them in your pocket and wait until you come back later and ask me now to send it back again to have them consider those. You should have raised them the first time, and I would have told them to consider them. Your Honor, Judge Morris remanded back to the Forest Service to consider the five pieces of new information and any new information. Any new information. Not any information that was old but you failed to raise, but any new information. So tell me why this was new information. New in the sense that since the original NEAP analysis was completed. Not since the decision was made. It's new since the original NEAP analysis was completed. And so in this sense, some of the analysis was prepared in 1970. The seven allotments of the NEAP was between 1970 and 2000. So there's a lot that's happened since that time. But if you read it that way, it leads to a strange result. What it means is you can come to the district court and say, there's five problems that lead them to have to do a new NEAP analysis. And the judge says, I agree with you. Go back and do a new NEAP analysis. And they do, and they address those five problems. And you say, there were three more that I could have raised back then, but I didn't. I want to raise them now, send it back again. And that seems to me to be not good procedure. So none of these arose after the judge's first remand. They were all issues that were in existence after the first remand. So I'm having trouble getting around that.  I agree. I have the same question. Is that premise correct, that none of this is new? Your Honor, there were new factual pieces of information about grizzly bears and their impacts since Gallatin 1 was decided. What are you relying on for your new evidence that couldn't have been raised first time? There was information regarding impacts on grizzly bears and information regarding impacts on recreationalists. And those impacts have occurred since Gallatin 1 was decided. But those same impacts had occurred before, had they not? Yes, Your Honor. They did. So that's why I'm having the same trouble here. So I'm trying to figure out what new you raised to the agency after the remand that you couldn't have raised before. You may have had an additional fact. But the argument, which is that you've ignored the effect on hikers and you've ignored the effect on predators, was available to you before and you didn't make it. And that's why I'm troubled by this notion that your position seems to set up a revolving door. As long as I can find a new fact that occurred after the remand. Your Honor, I understand that concern. And I think that if the Forest Service was concerned about that, if they were really concerned about that, they would have said as much in their response to the comments. But they didn't. They accepted all this information, analyzed it, and said none of this information is significant. And now, in litigation, they're saying, well, you're precluded from that. They should have said you can only raise the five pieces of information you want on Gallatin 1. But the public, everyone else, submitted comments regarding grizzly bears, impacts on recreation, all sorts of things. And the Forest Service analyzed all that information. So this gets us back to because the district court never, because it ruled on claim preclusion, didn't say, well, your finding of no environmental significance is good, bad, or indifferent. It just said you can't attack it for the same reasons you could have before. But it also seemed to cite the Rescission Act. So tell me why, since they were in the process of doing a new environmental assessment, I think. Maybe it's an EIS. I forget. They're in the process of doing something. Why the Rescission Act doesn't block your claim? Your Honor, the Rescission Act was put in place to ensure that actions that have not had NEPA at all can continue to go forward until NEPA is complete. In this case, six of the seven allotments have had NEPA completed. And so the Rescission Act does not apply. Judge Moore said that in Gallatin 1, said the Rescission Act does not apply. The Forest Service did not appeal that decision. And so they're now stuck with that. And so we're saying – No, they won. They don't have to appeal anything the second time through. They did raise the Rescission Act in defense the second time, didn't they? In the second case. In this case, yes. So they're entitled to defend the judgment on any basis supported by the record. They don't have to appeal. They won. So if the Forest Service – I'm not sure we need to address the Rescission Act, but I don't see how they forfeited any reliance on it. The Forest Service said that we are going to prepare NEPA analysis consistent with the Rescissions Act in 2019. They said we'll have an EIS done in 2019. That's come and gone. They said the same thing in 2020. We're going to do it by 2022. That has come and gone. We keep hearing the same thing every year. We're going to do it. We're going to do it. And at some point, the rubber has to meet the road, Your Honor. If the Forest Service can be compelled to complete supplemental NEPA analysis, this Court has jurisdiction to require them to do it in a timely manner. We only have jurisdiction to do so if they have a mandatory duty to do so by – and you don't cite a – we get to the reply brief before we find a reg that supposedly supplies the duty. But that reg says they can extend it. And so does a duty that can be extended at the discretion of the agency provide a mandatory duty? Your Honor, Section 706.1 of the EPA allows a party to bring undue delay claim. And so in this case, Section 706. When there's a – when the agency is required to take an action. An agency action is undue delay, yeah. And so the action in this case – and granted, this goes to remedy. Assuming that the information is significant, the Court can then order the Forest Service to prepare supplemental NEPA analysis by date certain. I think there's – I think the jury's still out on whether the information we've provided is in fact significant. So, for example, more hikers said, I was frightened by a sheepdog. But it's the same client. Am I correct? You have additional – initially you had hikers saying, the sheepdogs are frightening, they run at you, and so on. And then what you're saying is, there were more people saying, I was frightened by a sheepdog, but they're not saying something different. I think they're saying we're frightened by sheepdogs and other – we can't hunt in this area, we can't use this area to recreate, et cetera. There was no judgment on the merits regarding the significance, Your Honor. And so the – That's right. We understand that. Okay. Okay. The judge said, this is a – this is claim precluded, so I don't have to address the claims. Well, I mean, in Gallatin 1. So we said there's new information, and we said, grizzly bears are not a threat to the forest. There was a judgment on the merits. The judge said the agency hasn't addressed these issues. You're correct, and it should. And so I'm remanding for them to address them. It doesn't have to reach the final issue of whether or not they were significant or not. What he's saying is – what he's saying is, you brought an APA case to me because you think the agency's action was arbitrary and capricious. I agree with you. They never addressed these issues. You win. Go back, agency, and address them. I'm not sure why that isn't a final judgment on the merits of the claim that you brought. What more could he have done? What more remained for him to do? For purposes of issue preclusion, Your Honor, I think that you need that – the decision on the merits of – Well, no, so he – this is a claim preclusion case. The judge says, you could have brought this claim the first time, but you didn't, and therefore you're barred from bringing it later. And the foresters – the foresters argued issue preclusion as well in this brief, so I just want to touch on that. Yeah, but it really is – when you read Judge Morris's decision, he says claim preclusion. Yes, Your Honor, yes. Real quickly, the last issue is the – whether we stated a claim for a leaf regarding the dead bighorn sheep. And so the complaint alleges that a dead bighorn sheep was found adjacent to one of the grazing allotments. The very next paragraph says that the dead bighorn sheep was actually in one of the domestic sheep allotments. Judge Morris said you didn't give enough facts or specificity regarding how far away this dead bighorn sheep was relative to the domestic sheep allotment. The complaint itself says the dead bighorn sheep was found in the domestic sheep allotment. We couldn't be any more specific, Your Honor. Thank you. You're welcome. Good morning, Your Honors. Is there anything in the record that shows where that, I think, 2013 sheep was found? Yes, Your Honor. So as to that third claim, this allegation in Plaintiff's Complaint seems to be identical to an allegation that was discussed in the record by the Forest Service at Supplemental Excerpts, page 87. Forest Service has a paragraph where they go through in depth and they investigated comments that in 2013 one bighorn ewe, dead bighorn ewe, was observed near Black Butte, within or near the allotments. But ultimately the agency was unable to verify if the carcass even was a bighorn ewe or determine the cause of death, source heard, or if commingling occurred. So without any sort of more factual development in the complaint, I think the district court was correct to dismiss under Rule 12b-6. This just goes back, I think, to the pattern in this case of plaintiffs bringing up information that has already existed and pointing to this information that they could have pointed to in the prior litigation in Gallatin 1, saying that the Forest Service needed to consider it. I think I want to get into all of this. I have a question you may not be able to answer. One reason we're here is that you're in the process of preparing something. Yes. Are you? An EIS? So, yeah, let me –  I think there's been – Well, just let me – what are you in the process of preparing? So the Forest Service has plans to prepare a new Environmental Impact Statement, EIS, covering all seven allotments under one umbrella. And you've had those plans for some substantial – For a long time, yes. Some substantial period of time. Yes. If you had brought those plans to consummation, we wouldn't be here on this case. That's correct. We'll be here on the next case. Yes. Where they attack the EIS. Possibly. So here's the question you may not be able to answer, but I'm interested in. Okay. When are you going to do it? I think the Forest Service has other management priorities on this forest. It's – So what you're telling us is you don't know. I don't know specifically what projects or what analysis the Forest Service has been doing. But what's critical with respect to that EIS is that the Forest Service isn't under a legal obligation. No, let's put that aside. Okay. We can get to that later. But is that really the rule? Because there isn't a specific obligation, and I think you have a strong argument to that effect. But so for folks who are concerned about this environmental situation, is it really the case that what Judge Hurwitz is referring to, which is this someday plan, could take forever? It's certainly the rule under Norton v. SUA that if plaintiffs are asserting an undue delay claim under 706.1 of the APA, they have to point to some legal obligation in order to come about.  That's the part I'm giving you in my hypothetical. Okay. I'm giving you that. So are we really in a posture then where this plan that Judge Hurwitz is referring to could be a plan that takes forever? I think absent some act of Congress that tells the agency that they need to complete an EIS for this new EIS that covers all seven allotments, there is no date certain by which. The answer to my question is yes. The answer is yes because all seven allotments are already covered by the required NEPA analysis. Forgive my interruption. No, no. I think you've addressed the issue that troubles me in this case that I can't solve. You've recognized, you the agency, that we ought to prepare a new EIS. And we're working on it. And once you do, it will either be a terrific EIS that the other side doesn't attack or they will think about things to attack it. In the meantime, what they're trying to get you to do is to prepare a new EIS. Can I ask you a related question? And so we're fighting about whether or not the actions you took in the past required you to prepare a new EIS, but you're doing one anyway. And so I'm trying to figure out why we're all here. We're mindful that we don't run the Forest Service. We get that. So I am curious, though, since it has been identified as a project on the Forest Service's list and pretty much every agency that comes before us talks about they have not enough resources to do their job, and I'm sympathetic to that. I imagine my colleagues are as well, but I don't want to speak for them. So if I remember the public concerned about what I'm hearing about today, is there a place a member of the public can go and see what the agency's priorities are? I am not sure I have the answer to that specifically. Public have an opportunity to have input into the priorities? I'm assuming there's too much on your plate to get it all done, that the agency hasn't lost interest and would like to get to this sooner rather than later. But my question is just whether, I guess it's a two-part question. Is there a place where a member of the public can see what that priority is and watch to see if it's going up the list? And is there an opportunity for the public to have input? My understanding, and I'm not speaking with a lot of confidence here because I don't know the inner administrative workings of this national forest specifically, but the national forest, it does publish a schedule of proposed actions. Now, these actions aren't ranked by priority, and I'm not sure whether there is a specific place that the public can go to submit input specifically about priority, but certainly there's opportunities for public comment on different projects. Let me ask you the question a different way. Let's assume, and I'm not suggesting we're going to do this, let's assume at the end of this case we ordered you to prepare a new EIS. Would anything change? If there was a court order, then I... You'd move it up on your priority list? Well, then there would be a legal obligation to prepare a new EIS. But not necessarily required by a particular time frame unless we gave you one. Right. So if there was a court order with no date certain... You've assumed the obligation to prepare one. You've told us that's our plan. Yeah, you've already started. I mean, if we ordered you to do one, what would you do differently than what you're doing today? I can't speak to the Forest's priorities, really, but I could say that in that case then plaintiffs might have a hook to bring a Section 706.1 undue delay claim if the Forest Service wasn't preparing... Although that would see my... This case troubles me in many ways, but what troubles me about this is that if we ordered you tomorrow to prepare a new EIS, the delay claim would start... The statute of limitations of the delay claim would start running tomorrow. Meanwhile, you've waited seven years, and you say you're doing one. So I'm not sure that if we gave them everything they ask for, they'd be better off than they are today. And so I'm just... I'm trying to figure out how it is that we get this process to the point that both sides seem to think it ought to end up with, which is a new EIS. I think the Forest Service will continue its plan to prepare this, but there's wildfires, there's diseases on the forest, and ultimately I can't give you any sort of commitment. He's asking a different question now. Is that right? If we were to order this tomorrow, this obligation that you've already assumed, would the statute of limitations start over again? Would they be worse off? Would the statute of limitations start over again? What would your delay be? The clock. Right. If the court... I think it would depend on what the courts say in its order. But if...  You must prepare a new EIS. Is that when your duty began, when we made the order? I think that's when the legal duty would begin.  And that's... I mean, we're dealing with these hypotheticals here because the Forest Service really is under no legal duty right now to prepare an EIS, and that's what I really need to keep emphasizing here. You're not under a legal duty to prepare it by a certain time, but are you really saying that you're not under a legal duty even though you've assumed the duty? Because now you're getting me more interested. This... So all seven grazing allotments are covered right now by the required NEPA analysis. The Forest Service, independent from this litigation, independent from what plaintiffs say, have decided they want to prepare a new EIS. They may have done so for reasons other than the reasons that they desire, but if you had prepared one, if you walked in with an EIS today, we would say this case is moot. Yes. Because, you know, you've done a new environmental analysis and that's all they're seeking, and so that's... You see, you understand the frustration here. Even though they want it for different reasons than your motivations, they want a new EIS. You're saying, fine, we're doing an EIS, but we're not sure when we're going to be done with it. In the meantime, we're litigating about the last one and no one thinks it will be in effect at some point in the future. And if Congress felt like... That's my question. If there were... Have there been questions under congressional oversight relating to this? Not to my knowledge. I can't speak on that. Because, you know, Judge Christian raised the question of public comment, but public comment can also come through Congress. That is, the public has a right to contact their congressional representative and say, hey, you need to take a look at this. And Congress can be often very responsive to that kind of question. Yeah, I just don't have... I haven't heard anything about that. I can't speak to that specifically. Can we get back to the mundane legal issue of claim preclusion? Yes. I want to understand exactly what happened here, because I think what your friend is saying is, look, we had complaints of the sort that we could have raised earlier, but now we have additional evidence. More hikers have been obstructed and maybe more predators have been injured. I think that's a fair summary of what he was saying. Is that enough to get past claim preclusion? So as we read their briefs, we don't think they have alleged that there is any new evidence that they couldn't have brought back in 2015 in Gallatin 1. I think, theoretically, if there were some plethora of new information that they now felt required the agency to look at and see if supplementation was warranted, then maybe that's enough to get around claim preclusion, because it's a new transactional nucleus of facts. You're saying there were no new facts at all? They have not argued that there were any new facts. It's the same information here. It's the same information. So it's not — Well, they are arguing there's new facts. Yeah, he's arguing today there are. That's why I'm asking. And that's — I don't think we saw that argument in their opening brief or in their briefs below. I think that argument is forfeited to the extent that now they're arguing that there are new facts that post-date the Gallatin 1 litigation. That wasn't something that we saw. Let me distinguish so that I'm clear in your answer. For example, there may have been predators killed before Gallatin 1, and then there may have been predators killed after the remand. Different ones. Different predators. The other ones were already dead. Or accounted for. Or accounted for. So let's assume that might be new information that the agency should consider, even though they could have raised the general claim of predators dying before. Yes. What you're saying is that they didn't even do the second. Yeah, we agree with that. At least the briefs don't reflect that they did the second. Yes. That's why I asked the same sheep question. Yeah, and I think — I mean, that goes to plaintiff's third claim about the dead bighorn ewe in 2013. They don't include a specific date in their allegations in the complaint, so we have no way of knowing if that is the same sheep or not. It sure seems like it's the same sheep that the Forest Service discusses at supplemental excerpts, page 87. Anything further? Unless the Court has any further questions. It doesn't appear that we do. Thank you, Your Honor. Thank you for your argument, Counsel. Your Honors, this is not a priority in any stretch of the imagination. The Forest Service has been telling the public for more than 20 years they're going to do this analysis, and they just are not doing it. And the idea that there is some sort of priority is just it can't be possible. The Forest Service entered into a secret agreement with these livestock producers saying we will not change any grazing at all, and they never disclosed that agreement in any NEEP analysis. And so that was Gallatin 1, and we won on the case. And Judge Moore said the public has a right to serve better. And so now here we are 10 years later, and they still haven't done the analysis. Your Honor, in terms of the dead bighorn sheep, in 2018 the Forest Service prepared new supplemental NEEP analysis on that dead bighorn sheep that postdated the Gallatin 1 decision. We're challenging that analysis. That's a totally different decision from Gallatin 1. The Forest Service prepared a supplemental EIS. We are challenging that supplemental EIS. There's new analysis. It's not the same transactional nucleus of facts. We have different final agency actions. Montana is the last best place. The secret that we call Montana is out. We have more and more people moving to Montana. There's more and more pressure on our public lands, and we're just asking the Forest Service to address the impacts on our native wildlife and on our residents. Thank you, Your Honor. Thank you both for your argument. We'll take that case under advisement.
judges: Wallach, CHRISTEN, HURWITZ